UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

JASON K. STRATTON,

    Plaintiff,

v.                                              Civil Action No. 5:16CV12204
                                             Judge Irene C. Berger

ARCH COAL, INC., a foreign corporation,
MINGO LOGAN COAL COMPANY, a
foreign corporation, and ARCH COAL         Removed From Circuit Court of
GROUP, LLC, a foreign corporation,           Raleigh County, No. 16-C-724

    Defendants.

**DEFENDANTS' MOTION *IN LIMINE* NO. 6:
TO EXCLUDE ALLEGED RUNYON THREATS**

        Defendants Mingo Logan Coal LLC ("ML") and Arch Coal, Inc. ("Arch") hereby moves this Court *in limine* to exclude all testimony, evidence, and argument of counsel to the effect that David Runyon threatened Plaintiff in an effort to stop him from talking about the kickback scheme. As set forth in detail below, this evidence is utterly irrelevant as demonstrated by the timeline of this case. Presentation of this evidence to the jury could only be designed to confuse and mislead it from focusing on the true issues of this case by use of inflammatory evidence, some of which is hearsay and must be excluded on those grounds, as well.

**Statement of Pertinent Facts**

        In his deposition, Plaintiff testified that he was threatened with discharge by David Runyon, the General Manager at ML, if he did not stop talking about the kickback scheme:

Q. What did he say?

A. He said Tim was fired for reporting stuff to St. Louis and that he didn't know what he was talking about.

Q. Do you know what he reported, Mr. Leep?

A. I have no clue.

Q. Okay. Who else was present when Carlos said this?

A. I couldn't tell you that.

Q. You said that Dave Runyon told you that.

A. Yes.

Q. What did Mr. Runyon say?

A. That was the first time he called me to his office and told me that he heard rumors that I was saying that they – he was taking kickbacks, him and Gary Griffith, and they fired Tim Leep over it and if I didn't shut my mouth, that I was going to be next.

Q. When did that happen?

A. Sometime after Tim Leep was fired?

Q. A year, 2011?

A. Probably wasn't even a year.

Q. You think – About what year do you think it happened?

A. I mean, I don't want to sit here and guess.

Q. It was before Mike Carey interviewed you, thought, right?

A. Yes.

Q. In fact, Dave Runyon had been fired before Mike Carey interviewed you yet, right?

A. Yes.

[Dep. of Jason Stratton at pp. 46-47, excerpts from which are attached hereto as "Exhibit 1." *See also* Ex. 1 at p. 39].[1] Similarly, Amon Mahon, Plaintiff's brother-in-law, testified as follows:

> Q. In the time frame you were talking with David Runyon about this kickback scheme, what time frame was that?
>
> A. I had to be somewhere in like 2008 to 2010 range. And subsequently, now, I've got two phone calls from David. Because, I mean, I've had lots of – I've been in his office.
>
> Q. Sure.
>
> A. But I got two phone calls from him threatening Jason, that he would – if – for Jason to shut his mouth or he would fire Jason and for – as his brother-in-law, for me to calm him down. So . . .
>
> MS. MORGAN: I'm going to interpose a hearsay objection to that.
>
> MR. NEW: Okay.
>
> Q. Roughly when did those two phone calls, threatening to fire Jason, come about?
>
> MS. MORGAN: Continuing objection.
>
> MR. NEW: I'll give you all the objections you want, Madame.
>
> Q. When – when roughly?
>
> A. 2009 to 2012, those two times. One of them was even at Jason's mother's house when I got the phone call from him on my mobile.
>
> Q. All right. So David Runyon called you while you were at Jason's mother's house?
>
> A. Jason's mother's house, that's right. Near Christmastime, too. So… He wanted to make sure that – that he got the message. So…
>
> Q. And what was the nature of Runyon's concern about Jason and this investigation?
>
> A. Runyon told me that none of this was true, it was all crap, and that Jason needed to shut up. So . . .

---

[1] Mr. Leep left employment with ML effective February 25, 2010. [*See* Exhibit 2 attached hereto, which is the affidavit of Paul Lang.

3

7831192.1

> Q. Did you ask Jason about the particulars of –
>
> A. I went – I talked to Jason. I said, "Jason, you know – you know, you need to think that – that – that he can fire you, that you have got to be careful of that."

[Dep. of Amon Mahon at pp. 99-100, excerpts from which are attached hereto as "Exhibit 3"].

## Discussion of Law

This evidence suffers from a number of flaws. Most significantly, this evidence is irrelevant to the determination of any fact of consequence at issue in this case. Plaintiff alleges that he was discharged for his participation in the FBI investigation into the kickback scheme. Defendants state that it discharged Plaintiff for his lack of candor in April of 2014 when he was interviewed by Mr. Carey.

> Q. Why would you have one then? What would be the purpose?
>
> A. I don't know why they would have one because when everybody at the mine knows what's going on and you've got a business manager that reports them to corporate and he loses his job, why would you want to go report anything to them? I've went back and reported it to them and it cost me my job.
>
> Q. Well, you lied to Mr. Carey –
>
> A. No, I didn't.
>
> Q. -- on April 21, 2014, didn't you?
>
> A. I didn't tell Mr. Carey nothing because I'd been called to Dave Runyon's office and he had threatened me every way possible, that he was going to fire me and if I didn't watch out, that I was going to be took out.
>
> Q. But, Runyon had already been fired before you went to see Mr. Carey.
>
> A. Yeah, but I didn't know what was going – I didn't know what they was going to do to me because I was getting the blame for telling the FBI on them.

[Ex. 1 at pp. 61-62]. Plaintiff's testimony, as well as that of Mr. Mahon, shows that the alleged threats took place well before Plaintiff was ever interviewed by Mr. Carey and that Plaintiff was told before that interview that Mr. Runyon had been discharged by Arch. Thus, Mr. Runyon's alleged threats had no power over Plaintiff and could not have formed the basis for his deliberate decision to withhold information from Mr. Carey. The evidence is irrelevant and must be excluded under Rule 402.

This evidence is hearsay. Rule 801 defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Mr. Runyon will not be testifying at trial. Plaintiff seeks to introduce this evidence to show that he was going to be fired if he continued talking about kickbacks, *ergo* he was not forthright when he was interviewed by Mr. Carey. This goes straight to the truth of the matter asserted, so the Rules require exclusion of this evidence on hearsay grounds.

Finally, the probative value of this evidence, if any, is substantially outweighed by its unfairly prejudicial, confusing, and misleading effect. Both Plaintiff and Mr. Mahon testified that the alleged threats occurred sometime between 2008 and 2012 with Plaintiff's best guess being 2011. This comports with the timeframe of Mr. Leep's separation in February of 2010. Mr. Runyon was discharged **before** Plaintiff was interviewed by Mr. Carey on April 21, 2014, so he could not have followed through on the alleged threat to discharge made years earlier. As a result, nothing should have held Plaintiff back from participating fully and truthfully in Arch's investigation of the kickback scheme. Permitting Plaintiff to present a clearly erroneous timeline to the jury, particularly where it forms the basis for his "excuse" not to be completely honest during the investigation, serves only to confuse and mislead the jury.

5

Plaintiff's excuse is irrelevant to the issue of whether his discharge was wrongful, retaliatory, or due to an alleged disability.

To permit the introduction of allegations that the General Manager of ML, who went to jail as a result of the kickback scheme, threatened Plaintiff to silence is unfairly prejudicial due to its inflammatory nature. Juries are to decide cases based upon relevant evidence. "Evidence produces unfair prejudice when it invites a jury to render a verdict on an improper emotional basis." Cleckley, F., *Handbook on Evidence for West Virginia Lawyers*, Vol. 1 (6th ed.) at § 403.05[2]. Runyon was not in a position to discharge Plaintiff at the time Arch conducted its investigation, so the alleged threats are designed only to incite the jury to make its decision based upon emotion and must be excluded.

## Conclusion

WHEREFORE, Defendant Mingo Logan Coal LLC respectfully requests that this Court GRANT its Motion *in Limine* and order that Plaintiff be precluded from offering any evidence, testimony, or argument of counsel to the effect that David Runyon threatened him in an effort to stop him from talking about the kickback scheme.

Dated this 15th day of December, 2017.

/s/ C. David Morrison
C. David Morrison (WV Bar #2643)
Shawn A. Morgan (WV Bar #6640)

STEPTOE & JOHNSON PLLC
OF COUNSEL

400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000
*Counsel for Defendants*
*Mingo Logan Coal LLC and Arch Coal, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of December, 2017, I electronically filed the "**Defendants' Motion *in Limine* No. 6: to Exclude Alleged Runyon Threats**" with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ C. David Morrison
C. David Morrison (WV Bar #2643)
Shawn A. Morgan (WV Bar #6640)
